FILED

2023 Mar-21  PM 02:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **JESSE DANIELS,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  4:21-CV-01503-RDP** |
| | } | |
| **KILOLO KIJAKAZI,** | } | |
| **Acting Commissioner of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OF DECISION</u>

Plaintiff Jesse Daniels brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI").  *See* 42 U.S.C. §§ 405(g) and 1383(c).  Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I.    Proceedings Below

Plaintiff filed her applications for disability, DIB, and SSI on January 15, 2019, alleging that her period of disability began on June 12, 2017. (Tr. 271–78). The Social Security Administration denied Plaintiff's applications initially and upon review. (Tr. 131). On May 1, 2019, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 30). Plaintiff's request was granted, and a hearing was held before ALJ Sheila E. McDonald on

February 4, 2020.[1] (Tr. 91–118). Plaintiff, her counsel, and a Vocational Expert ("VE"), Mary Pierce, were in attendance. (*Id.*).

In a March 3, 2021 decision, the ALJ determined that Plaintiff had not been disabled within the meaning of Section 1614(a)(3)(A) of the Act since January 15, 2019, the date her applications were filed. (Tr. 30–42). On May 25, 2021, Plaintiff submitted supplemental evidence for review by the Appeals Council. (Tr. 9). The Appeals Council considered Plaintiff's supplemental evidence and denied her request for review, concluding that it failed to create a reasonable probability of changing the ALJ's decision. (Tr. 2). That determination became the final decision of the Commissioner and, therefore, a proper subject of this court's appellate review. (Tr. 1).

Plaintiff was twenty-nine years old at the time of the hearing. (Tr. 119). She has a high school education and lives independently with her minor son. (Tr. 100–01). Plaintiff has previously worked as a babysitter, receptionist, production line worker, quality assurance inspector, and cashier. (Tr. 128, 378). She alleges disability beginning June 12, 2017, due to kidney stones, pilonidal cysts, a bulging disc, knee dislocation, depression, and anxiety. (Tr. 120). During her hearing with the ALJ, Plaintiff further alleged disability based on herniated nucleus pulposus, obesity, hidradenitis supperativa, sleep apnea, shoulder pain, gastroesophageal reflux disease ("GERD"), colitis, and post-traumatic stress disorder. (Tr. 33–40).[2]

Plaintiff submitted an extensive medical history, including records from eighteen different medical centers. (Tr. 455–69, 514–53, 587–764, 792–847). Plaintiff's most common healthcare providers were Gadsden Regional Medical Center and Northeast Orthopedic Clinic, where she was

---

[1] A supplemental hearing was held on January 26, 2021, to present new evidence. ALJ McDonald, Plaintiff, her counsel, and VE, Brenda White, were in attendance. (Tr. 63–88).

[2] Plaintiff provided additional evidence to the Appeals Council about the disabling effects of a panic disorder, ADHD, human papillomavirus, endometritis, and reversal of cervical lordosis. (Tr. 26). No evidence or discussion of these maladies exists beyond naming them; further, these conditions do not appear to be indicated anywhere else in the medical records.

seen by at least thirteen different doctors and had thirty-five separate assessments, with each visit featuring various testing, labs, and prescriptions. (Tr. 470–513, 554–86, 827–44). Essential to Plaintiff's arguments is her developing history of anxiety and chronic pain in relation to her functional capacity. (Pl. Mem. 22–38). The facts related to Plaintiff's argument are limited to those within the medical records at issue in this case. (Pl. Mem. 2). The claims raised before this court only feature analysis of (1) her time off task and absenteeism from work and (2) specific reports from Drs. Teschner and Herrera. (*Id.*).

While not raised in legal arguments before this court, Plaintiff's obesity, hidradenitis supperativa, residuals of a right arthroscopy, GERD, left knee patella dislocation, colitis, and sleep apnea are conditions that appear extensively throughout her medical records, and these were addressed in the ALJ's decision. (Tr. 32–38, 119, 470–513, 731–49, 827–44). Plaintiff's obesity and hidradenitis supperativa have both been diagnosed by Dr. Pascual Herrera of Quality of Life Health Services ("Quality of Life") and Dr. Eric Baum of Dermatology Specialists of Alabama with prescriptions ordered for treatment of each condition; however, she has been non-compliant with those prescriptions. (Tr. 119, 626–27, 731–49). Plaintiff's other medical diagnoses -- GERD, left knee patella dislocation, colitis, and sleep apnea -- involve no further treatment or prescriptions; rather, they only are referenced in her medical history on various records. (Tr. 470–513, 827–44).

Plaintiff's medical records feature a developing history of anxiety which was apparently initially referenced beginning in a February 2018 examination at Springville Primary Care. (Tr. 530). A February 22, 2018 assessment features a notation for a psychiatry referral for Plaintiff's "severe anxiety," along with two prescriptions. (*Id.*). While there are no specific psychiatric records in Plaintiff's medical record history, the records do demonstrate further discussions with

various physicians related to Plaintiff's anxiety. (Tr. 526, 731). These discussions occurred on March 22, 2018 and December 12, 2019, during examinations on those dates at Springville Primary Care and with Dr. Herrera. (*Id.*) While Plaintiff discussed her purported anxiety during these examinations, her examinations by Dr. Janie Teschner at Mercy Medical Clinic on three occasions during June 2019 explicitly mention Plaintiff's denial of "anxiety, depression, or memory loss." (Tr. 786, 788, 791).

Plaintiff first began receiving treatment at Springville Primary Care for chronic back pain on April 18, 2018. (Tr. 518–19). Upon review, Dr. George Harris referred Plaintiff to Gadsden Surgery Center for pain management epidurals for lower back pain. (Tr. 627). Drs. Howard Friedman, John Walker, and George Fant performed three successful epidural injections over a fourteen-day period in May 2018. (Tr. 629–70). Plaintiff continued to suffer from back pain, eventually requiring a hemilaminectomy and discectomy to address an irregularity in her spine. (Tr. 476–479). The hemilaminectomy was performed by Dr. Daniel Ryan at Gadsden Regional Medical Center on July 12, 2018. (*Id.*) Despite this procedure, Plaintiff continued to report lower back pain to Dr. Herrera in December 2019 and February 2020. (Tr. 735, 800).

Plaintiff's medical history includes various discussions regarding her capacity to stay on task and be present for work due to her mental health problems and back pain. (Tr. 10, 25, 759–60). These records feature checklists prepared by Plaintiff's attorney with no room for discussion or explanation and therefore contain significant contradictions. (*Id.*). Reports from Dr. Teschner, dated February 4, 2020, find that Plaintiff's back pain limits her ability to sit upright to one hour, stand for less than fifteen minutes, and would force her to lie down and sleep for five hours during an eight-hour workday. (Tr. 758). Further, Plaintiff would reportedly be off task for 70% of an eight-hour workday and would be absent more than seven days during a thirty-day work period.

(*Id*.). Likewise, Dr. Herrera completed two different forms created by Plaintiff's attorney on February 24, 2020, in which he found that her back pain and failure to take her prescribed medications meant that she could only sit upright for one hour, only stand for one hour, must lie down and sleep for two hours during an eight-hour workday, would be off task 20% of an eight-hour workday, would be absent ten days during a thirty-day work period, and would require four thirty-plus minute bathroom breaks each workday. (Tr. 759–60).

Following the ALJ's decision, Plaintiff submitted two introductory assessments conducted by Dr. June Nichols from Gadsden Psychological Services performed on April 22, 2021 and May 25, 2021. (Tr. 10, 20–26). The first assessment focuses on Plaintiff's psychological effects of her pain, including depression, panic attacks, anxiety, ADHD, and chronic pain. (Tr. 20–26). The later assessment determined Plaintiff would be off task 60% of an eight-hour workday and would be absent ten to fifteen days during a thirty-day work period. (Tr. 10). Dr. Nichols' initial assessment found Plaintiff "neat and clean" and reported her conversation and consciousness to be "clear" and "normal." (Tr. 10, 20–26). But, her second assessment found Plaintiff incapable of maintaining socially appropriate behaviors and adhering to basic standards of neatness and cleanliness. (*Id.*).

## II.    ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as activity that is both "substantial" and "gainful." *Id.* § 404.1572. "Substantial" work activity is work that involves doing significant physical or mental activities. *Id.* § 404.1572(a). "Gainful" work activity is work that is done for pay or profit. *Id.* § 404.1572(b). If the ALJ finds that the claimant engages in an activity that meets these criteria, then the claimant cannot claim disability. *Id.* § 404.1520(b). Second, the ALJ must

determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. *Id.* § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See id.* §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. *Id.* § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. *Id.* § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. *Id.* § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. *Id.* §§ 404.1520(g) , 404.1560(c).

Here, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 12, 2017. (Tr. 32). She further found that Plaintiff suffered from various severe impairments, including degenerative disc disease status post hemilaminectomy discectomy, obesity, hidradenitis

supperativa, and the residuals of right shoulder arthroscopy. (*Id*.). The ALJ also found that Plaintiff's GERD, left knee patella dislocation, colitis, and obstructive sleep apnea are not severe impairments. (Tr. 33). The ALJ held that none of Plaintiff's severe impairments met any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 35). Plaintiff's physical impairments did not meet the criteria for the major dysfunction of joints or disorders of the spine. (*Id*.). In addition, Plaintiff's mental impairments were determined to be only "minimal limitation[s]" on her ability to perform work activities. (Tr. 33). Applying the Listing of Impairments (20 C.F.R., Part 404, Subpart P, Appendix 1), the ALJ found Plaintiff had no limitations understanding, remembering, or applying information or concentrating, persisting, or maintaining pace, and had only mild limitations interacting with others or adapting and managing herself. (Tr. 34). The VE provided feedback and discussion of various jobs available to a similarly situated hypothetical claimant. (Tr. 114–16).

After careful consideration, the ALJ found that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with these exceptions: she can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; occasionally balance; never climb ladders, ropes, or scaffolds; occasionally reach overhead with her right upper extremity; occasionally manage exposure to extremes of temperature and humidity; occasionally handle exposure to vibration and never experience hazards such as unprotected heights and dangerous machinery. (Tr. 82–83). She can understand, remember, and carry out simple instructions and tasks; tolerate changes in the workplace that are infrequent and gradually introduced; and have occasional work-related interaction with supervisors, co-workers, and the general public. (*Id.*). She also must alternate between sitting and standing every forty-five minutes for one to three minutes but can remain on task. (*Id.*).

Based on her RFC, the ALJ determined Plaintiff can no longer perform her past relevant work as a cashier clerk, which is classified as semiskilled with light exertion level, or as an injection molding machine tender, which is classified as unskilled with light level of exertion. (Tr. 40). After hearing the testimony of the VE, the ALJ determined that there are jobs that exist in the national economy that Plaintiff is capable of performing based on her age, experience, education, and RFC capabilities, such as an addressing clerk, almond blancher, and sticker. (Tr. 40–41).

### III.    Plaintiff's Argument for Remand or Reversal

Plaintiff presents two arguments for reversing the decision of the ALJ: (1) the Appeals Council improperly denied her request for review of additional evidence submitted after the ALJ's decision on March 3, 2021; and (2) the ALJ failed to accord proper weight to her treating physicians, Drs. Herrera and Teschner. (Pl. Mem. 2).

### IV.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See id.* at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701. And "when the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate." *Washington v. Social Sec. Admin., Comm'r*, 806 F.3d 1317, 1321 (11th Cir. 2015). Whether supplemental evidence meets the "new, material, and chronologically relevant standard" is a question of law subject to *de novo* review. *Id.*

## V. Discussion

Plaintiff asserts that the Appeals Council and the ALJ committed legal error warranting reversal of their decisions. (Pl. Mem. 2). Plaintiff challenges the Appeals Council's refusal to review supplemental evidence and the ALJ's refusal to follow the treating-physician rule. (*Id.*). The court addresses each argument in turn.

### A. The Appeals Council Correctly Denied Review of Plaintiff's Supplemental Evidence Submissions.

With few exceptions, a claimant may present new evidence at each stage of the administrative process. *Ingram v. Comm'r, Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007). If the claimant shows "good cause" for failing to submit the evidence to the ALJ, it can be presented to the Appeals Council. *Id.* at 1259-60. The Appeals Council must consider "new, material, and chronologically relevant evidence," and as appropriate, it must review the case if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of

record." *Id.* at 1261; *see* 20 C.F.R. § 404.970(b). The Appeals Council concluded that Plaintiff's supplemental "Medical Source Statement" and "Psychological Evaluation" submissions failed to warrant review for materiality and chronological relevance, respectively. (Tr. 2, 10, 20–23, 25, 33–35, 39–40, 101–103, 109).

When denying a request for review, the Appeals Council is not "required 'to provide a detailed discussion of a claimant's new evidence.'" *Ingram*, 496 F.3d at 692 (quoting *Mitchell v. Comm'r Soc. Sec. Admin.*, 771 F.3d 780, 783 (11th Cir. 2014)). However, it must "apply the correct legal standards in performing its duties." *Mitchell*, 771 F.3d at 784; *see Hethox v. Comm'r of Soc. Sec.*, 638 F. App'x 833, 836 (11th Cir. 2015) (reversing the Appeals Council, finding there was "nothing in the Appeals Council's denial to indicate that it properly determined whether the new, material evidence met" the requirements of the applicable Social Security Disability Listing). Reversal of an Appeals Council's denial is necessary when it lacks sufficient reasoning for the court to conduct a proper legal analysis. *Hethox*, 638 F. App'x at 836; *see Mitchell*, 771 F.3d at 738 (affirming the Appeals Council's denial based on consideration of additional evidence rather than a perfunctory adherence to the ALJ's decision); *Mansfield v. Astrue*, 395 F. App'x 528, 530 (11th Cir. 2010) (refusing to require the Appeals Council's denial to explain why additional evidence would change the ALJ's decision and instead finding a statement of consideration sufficient).

Here, the Appeals Council specifically acknowledged Plaintiff's new evidence, stating that it "considered" the reasons Plaintiff disagrees with the ALJ's decision but found those reasons provide no basis for changing the decision. (Tr. 1). The Appeals Council concluded that Plaintiff's "Mental Health Source Statement" from Dr. June Nichols, dated May 25, 2021, did not show a reasonable probability of changing the decision and therefore was not material. (Tr. 2). Further,

the "Psychological Evaluation" from Dr. Nichols dated April 22, 2021 did not relate to the applicable period of disability and was therefore determined not to be chronologically relevant. (*Id.*). These statements sufficiently demonstrate that the Appeal's Council considered Plaintiff's new evidence. *See Mansfield*, 395 F. App'x at 530 (affirming an Appeals Council decision because it "had considered the additional evidence . . . submitted but was denying review because that evidence did not provide a basis for overturning the ALJ's decision"). The question here, which is one of law to be reviewed *de novo*, *Washington*, 806 F.3d at 1321, is whether the Appeals Council's finding of a lack of materiality or chronological relevance accurately represents Plaintiff's new evidence submissions.

Plaintiff's initial brief fails to set forth any substantive analysis supporting her claim that the Appeals Council erred in denying review in light of Dr. Nichols' findings. (Pl. Mem. 22–25). However, Plaintiff's reply brief argues that the court should view Dr. Nichols' two separately dated evaluations as one document with the material and chronological deficiencies cured by reading them together. (Pl. Reply 8). While *de novo* review applies here, as discussed below, the court has reviewed both pieces of supplemental evidence for materiality and chronological relevance and determines that the Appeals Council did not err in its denial of review.

      1.     **The Appeals Council Correctly Determined that Plaintiff's Newly Submitted "Mental Health Source Statement" from Dr. June Nichols, Dated May 25, 2021, was Not Material.**

New evidence is considered "material" if a reasonable probability exists that the evidence would change the administrative decision. *Washington*, 806 F.3d at 1321 (finding materiality existed when a new physician's evaluation contradicted a previous physician's evaluation). Therefore, materiality does not exist when new evidence merely echoes evidence previously considered by the ALJ in her decision. *Id.* The court finds Plaintiff's Mental Health Source

Statement does not rise to a level of materiality – *i.e.*, it does not create a reasonable probability to change the ALJ's decision. (Tr. 10).

Plaintiff asserts that the "brief" evaluation in Dr. Nichols' Mental Health Statement provides an independent basis that her need for time off-task and absenteeism render her disabled. (Pl. Reply 9). However, records which were already considered by the ALJ mirror or supplement most of Dr. Nichols' Statement's findings. (Tr. 10, 33–35, 39–40, 101–103, 109). Dr. Nichols' primary findings concerning Plaintiff's disability concern her ability to concentrate, punctuality, cleanliness, time off-task, and absenteeism from work. (Tr. 10). The ALJ considered evidence that is similar or identical to that in Dr. Nichols' Statement, and found Plaintiff has no limitation in concentration and only mild limitations concerning punctuality and cleanliness. (Tr. 34–35).

Considering Plaintiff's time off-task, the ALJ determined an assessment that Plaintiff would be off task for 70% of the day has "no objective support" and is directly contradicted by Plaintiff's statements about her ability to care for her child. (Tr. 40). While absenteeism is not explicitly mentioned in the decision, the ALJ's decision discusses multiple doctors' evaluations of Plaintiff, which feature reports on absenteeism. (Tr. 39–40, 758–760). These evaluations, which the ALJ found unpersuasive, report similar points about absenteeism as those in Dr. Nichols' Mental Health Statement. (Tr. 758–760); *see* 20 C.F.R. § 404.1520b (stating evidence that is neither valuable nor persuasive does not require "any analysis about how [the ALJ] considered such evidence in [her] decision"). Dr. Nichols' evaluation of Plaintiff's time off-task and absenteeism does not create a reasonable probability that the ALJ would have changed her rationale if that evidence had been reviewed; therefore, it is not material.

2.     **The Appeals Council Correctly Determined that Plaintiff's Newly Submitted "Psychological Evaluation" from Dr. June Nichols, Dated April 22, 2021, was Not Chronologically Relevant.**

The Psychological Evaluation completed by Dr. Nichols appears to demonstrate a change in Plaintiff's condition after the date of the ALJ's decision, thereby making the newly submitted evidence not chronologically relevant. (Tr. 2, 20–23, 25). New evidence is chronologically relevant if it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b); *Ingram*, 496 F.3d at 1261; *see Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999) (noting the issue in a matter involving disability is whether a claimant was "entitled to benefits during a specific period of time, which was necessarily prior to the date of the ALJ's decision").

In *Washington*, the Eleventh Circuit found that a psychologist's medical opinion evidence that post-dated the ALJ's decision was chronologically relevant. 806 F.3d at 1322–23. The evidence's chronological relevance stemmed from a previously treated condition and its similarity to symptoms presented to a psychologist performing a holistic, long-term review of the claimant's mental ability. *Id.* (emphasizing the psychologist's "opinions about [claimant's] cognitive defects . . . relate[d] back to the period before the ALJ's decision"). Further, the lack of an assertion or evidence of a decline in the claimant's "cognitive skills" were essential to the Eleventh Circuit's decision. *Id.*

Critically, the medical conditions in *Washington* – particularly, the claimant's cognitive defects, which had not "declined in the period following the ALJ's decision" – were longstanding conditions, which were not subject to fluctuation or material change. *See id.* In *Washington*, the psychologist's review of the claimant's conditions and records made the psychologist's opinion relevant to the period before the ALJ's decision. *See id.* Because the psychologist opined on

conditions that had been present and unchanged since before the ALJ's decision, the opinion was chronologically relevant. *See id.*

Plaintiff argues that Dr. Nichols' Evaluation is chronologically relevant because (1) it features a list of medical records, (2) the listed medical records are relevant to the period of claimed disability, (3) Dr. Nichols based her evaluation on a holistic view of these records and Plaintiff's cognitive state at the time of the evaluation, and (4) the evaluation creates a reasonable probability of changing the ALJ's decision. (Pl. Reply 7–8). The court disagrees.

Here, the pre-printed conclusions on the questionnaire Dr. Nichols completed do not provide any support for a conclusion that Plaintiff's limitations dated back to 2017. (Tr. 10). Dr. Nichols certainly did not relate her findings back to any observations, conclusions, or records from a particular examination of Plaintiff that occurred before the ALJ's decision. Indeed, all that Dr. Nichols has provided is a base conclusion drawn from a pre-drafted questionnaire.[3] (Tr. 10); *cf. Ring v. Soc. Sec. Admin.*, 728 F. App'x 966, 969 (11th Cir. 2018) (finding no chronological relevance because physician did not "discuss his findings in relation to [claimant's] earlier medical records, and his evaluation does not appear to be based on that material") (citing *Hargress*, 874 F.3d at 1309-10).

The Appeals Council also properly determined that Dr. Nichols' April 22, 2021 opinion and examination findings do not relate to the relevant period, which ended on March 3, 2021. (Tr. 2). Dr. Nichols' examination of Plaintiff was conducted subsequent to the ALJ's decision. On their face, the examination findings indicate Dr. Nichols' view of Plaintiff's mental status on April 22, 2021, not before March 2021.

---

[3] Of course, there is a separate problem with Dr. Nichols' analysis. As the Eleventh Circuit has concluded, similar questionnaires submitted to the Appeals Council were properly found to be immaterial because they provided slight probative evidence. *See e.g.*, *Harrison v. Comm'r of Soc. Sec.*, 569 F. App'x 874, 881 (11th Cir. 2014); *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011).

The evidence Dr. Nichols considered post-dates the ALJ's decision. At best, it suggests Plaintiff's condition worsened. The Appeals Council properly determined that the evidence did not relate to the period adjudicated by the ALJ. *See Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999). And, nowhere in the April 22, 2021 examination report does Dr. Nichols relate these opinions back to the relevant period or indicate that her findings and opinion were chronologically relevant. A careful review of the new evidence shows that Dr. Nichols simply summarized the findings of other medical practitioners based upon Plaintiff's medical history regarding her back and shoulder pain, cysts, depression, and panic attacks. (Tr. 25, 758, 759–60). *See Ring*, 728 F. App'x at 969 (finding no chronological relevance because physician did not "discuss his findings in relation to [claimant's] earlier medical records, and his evaluation does not appear to be based on that material") (citing *Hargress*, 874 F.3d at 1309–10). Because the new evidence did not relate to the period on or before the ALJ's decision, the Appeals Council properly denied review for lack of chronological relevance. *Washington*, 806 F.3d at 1322–23.

In conclusion, the Appeals Council's denial of Plaintiff's new evidence submitted after the ALJ's decision was proper. (Tr. 2). The redundancy of Dr. Nichols' Statement does not create a reasonable probability that the new evidence would alter the ALJ's decision. (Tr. 2, 10, 33–35, 39–40, 101–103, 109). Further, the failure of Dr. Nichols' Evaluation to relate back to Plaintiff's period of claimed disability, along with a proper contextual view of the Evaluation, does not establish the chronological relevance necessary to warrant review. (Tr. 2, 20–23, 25). Because Dr. Nichols' Statement was not material, and Dr. Nichols' Evaluation was not chronologically relevant, neither created a reasonable probability of changing the ALJ's decision. The Appeals Council's denial to review Plaintiff's new evidence was proper.

**B.    The ALJ Properly Evaluated the Opinions of Drs. Janie Teschner and Pascual Herrera.**

Plaintiff next argues that the ALJ was required to give deference to the opinions of her treating physician, but she relies upon a regulation that has been abrogated. 20 C.F.R. §§ 404.1520c(a) ("treating-physician rule"); (Pl. Mem. 25). Actually, the ALJ applied the correct legal standard in reviewing Plaintiff's medical records, and her findings are supported. (Tr. 38–40). Under the current regulations, which apply to an application filed on or after March 27, 2017 (like the application in this case), an ALJ should not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," including the opinion of a treating physician. 20 C.F.R. §§ 404.1520c(a); *see Harner v. Soc. Sec. Admin.*, 38 F.4th 892, 896 (11th Cir. 2022) ("Because section 404.1520c falls within the scope of the Commissioner's authority and was not arbitrary and capricious, it abrogates our earlier precedents applying the treating-physician rule."). Rather than applying the abrogated treating-physician rule, an ALJ "must weigh medical opinions based on their persuasiveness." 20 C.F.R. § 404.1520c(a); *Glover v. Soc. Sec. Admin.*, No. 22-10497, 2022 WL 17826364, at *3 (11th Cir. Dec. 21, 2022).

The factors an ALJ reviews in assessing medical opinions are: (1) supportability; (2) consistency; (3) the relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, and the purpose and extent of the treatment relationship; (4) specialization; and (5) other factors, including evidence showing that the medical source has familiarity with other evidence or an understanding of the SSA's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(b)–(c) ("The factors of *supportability* . . . and *consistency* . . . are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions.") (emphasis added).

The "most important factors" when reviewing the persuasiveness of medical opinions, supportability and consistency, must be addressed in an ALJ's explanation. 20 C.F.R. § 404.1520c(b)(2). In reviewing the supportability of medical opinions, an ALJ must consider the relevance and supporting explanations of a medical source's evidence. 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinion(s) . . . will be."). And, a proper review for consistency with medical opinions requires an ALJ to compare the evidence offered and the entirety of the claimant's medical record. 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources . . . the more persuasive the medical opinion . . . will be."). While supportability and consistency require review in an ALJ's decision, review of the other factors is discretionary. 20 C.F.R. § 404.1520c(b)(2).

As the Eleventh Circuit recently held, 20 C.F.R. § 404.1520c abrogated the previously used treating-physician rule. *Harner*, 38 F.4th 892, 898; *see also Glover*, 2022 WL 17826364, at *3. In *Harner*, the Eleventh Circuit specifically stated that because ALJs are forbidden from deferring or giving "specific evidentiary weight" to medical opinions, an ALJ does "not err by declining to give more weight" to a treating physician. 38 F.4th at 898 (quoting 20 C.F.R. § 404.1520c(a)).

Accordingly, under *Harner*, the ALJ did not err by failing to give considerable weight to the opinions of Drs. Teschner and Herrera under the now-abrogated treating-physician rule. *Id.*; (Tr. 38–40). Although Plaintiff argues that the ALJ failed to afford proper weight to Drs. Teschner and Herrera as Plaintiff's treating physicians, this argument is clearly off the mark. 20 C.F.R. § 404.1520c (eliminating the "Treating Physician Rule" for all claims filed after March 27, 2017); *Harner*, 38 F.4th 892, 896 (11th Cir. 2022) ("Because section 404.1520c falls within the scope of

17

the Commissioner's authority and was not arbitrary and capricious, it abrogates our earlier precedents applying the treating-physician rule."); (Pl. Mem. 25); (Tr. 30) ("On January 15, 2019, [Plaintiff] protectively filed a Title II application for a period of disability and disability insurance benefits").

The ALJ did not defer -- and was not required to defer -- to the medical opinions of the treating physicians. However, the court will consider whether the ALJ properly evaluated medical records in her decision to deny Plaintiff's Social Security Disability Eligibility. 20 C.F.R. § 404.1520c(b)(2). The ALJ addressed Dr. Teschner's proffered medical opinions and found them conclusory, lacking evidentiary support, and inconsistent with the entirety of the medical record history. (Tr. 39–40, 783–791). Further, the ALJ determined that Dr. Herrera's evaluations, considering the entirety of Plaintiff's medical history, were inconsistent, contradictory, and conclusory. (Tr. 38–39, 759–760). The ALJ satisfied her required standard for reviewing the supportability and consistency of the medical records. (*Id.*).

The ALJ reviewed the medical records of Dr. Teschner and Dr. Herrera and determined them to be lacking on several grounds and also discussed their limited persuasive value, their unsupportability, and inconsistency. (Tr. 38–40) ("[Dr. Herrera's] statements are not an objective determination regarding limitations, but rather, are designed to elicit a pre-determined response.") ("I would note that Dr. Teschner's last appointment with the claimant was . . . some eight months before [Dr. Teschner's Medical Opinion] was rendered. For all these reasons, I am not persuaded by Dr. Teschner's assessment."); *see* 20 C.F.R. § 404.1520c(b)(2) ("The factors of supportability . . . and consistency . . . are the most important factors."). The ALJ did not err in reviewing Plaintiff's medical records. There are no legal grounds for reversal or remand based on the ALJ's decision. (Tr. 38–40).

## VI.   Conclusion

The Appeals Council correctly denied review of Plaintiff's case as the newly submitted evidence was neither material nor chronologically relevant. *See* 20 C.F.R. § 404.970(b). The ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination.   The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this Memorandum of Decision will be entered.

**DONE** and **ORDERED** this March 21, 2023.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE